*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HENRY LEWIS JONES, JR.,

      Defendant-Appellant.

UNPUBLISHED
July 15, 2026
1:32 PM

No. 367476
Calhoun Circuit Court
LC No. 2021-000892-FC

Before: M. J. KELLY, P.J., and PATEL and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals by right following his jury-trial convictions on charges of first-degree felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). On appeal, defendant contends that the trial court abused its discretion by admitting evidence of other acts of domestic violence; that his convictions violate his right against double jeopardy because a single act cannot support convictions for both felony murder and child abuse; and that the trial court erred at resentencing by failing to consider his youth as mitigating. For the reasons stated in this opinion, we affirm defendant's convictions but vacate and remand for resentencing.

## I. BACKGROUND AND FACTS

This case arises out of the death of 18-month-old DS on November 7, 2020. Defendant was in a relationship with Desiree Taylor, the mother of DS, and he lived with her, DS, and Desiree's two other children, AH (eight years old) and JC (three years old).

On the day in question, Desiree left for work around 7:00 or 7:30 p.m. and left both DS and AH in defendant's care at their home.[1] JC was in the care of Sharon Taylor, his grandmother, who lived about three blocks away. While AH was watching television downstairs, he heard DS

---

[1] As a result of previous domestic-violence incidents, Children's Protective Services (CPS) had put a safety plan in place that prohibited defendant from being around the children. As will be discussed, evidence of the domestic-violence incidents was admitted at trial.

crying, and he heard "stomping around." A few minutes after AH heard those noises, defendant came downstairs with DS in his arms, and he told AH to start the car and grab defendant a bag. At some point, defendant gave DS to AH, and AH noticed that DS was not breathing, was limp, and his eyes were closed. Defendant then sped to Sharon's house with AH and DS. Defendant arrived at Sharon's house at approximately 10:00 p.m. Defendant banged on Sharon's door, and when she opened it, she saw defendant with DS in his hands and noticed that DS's arm was limp. Sharon took DS from defendant and told one of her daughters to call 911. While Sharon was attempting to revive DS, defendant left, and Sharon never saw or heard from defendant again. First responders arrived and also tried to revive DS. DS was then transported to the hospital and pronounced dead at 11:59 p.m.

The medical examiner informed the police that DS's injuries were consistent with homicide caused by physical abuse. DS had significant bruising and lacerations both externally and internally, as well as abdominal bleeding, and DS's liver had been nearly severed into two pieces.

Defendant was arrested and charged with open murder and first-degree child abuse. A jury convicted defendant of first-degree felony murder and first-degree child abuse. The trial court initially sentenced defendant to life without parole (LWOP) for murder and a concurrent term of 23 to 60 years' imprisonment for child abuse. After defendant filed his claim of appeal, he moved for resentencing on grounds that he was 18 years old at the time offense and the prosecutor had not filed a motion seeking LWOP and a *Miller*[2] hearing pursuant to MCL 769.25 and *People v Parks*, 510 Mich 225, 267-268 & n 19; 987 NW2d 161 (2022). The prosecutor conceded that resentencing was required, and the trial court granted defendant's motion. Defendant was then resentenced to a term of 40 to 60 years' imprisonment on the murder conviction.[3]

This appeal follows.

## II. ANALYSIS

### A. OTHER-ACTS EVIDENCE

Defendant contends that the trial court abused its discretion when it allowed evidence of other acts of domestic violence against Desiree and the children because the evidence was unfairly prejudicial. We disagree.

We review a trial court's decision to admit evidence for abuse of discretion. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Id*. A trial court's decision on a close evidentiary question "ordinarily cannot be an abuse of discretion." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "However whether a rule or statute precludes admission

---

[2] *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

[3] Defendant's sentence on the child-abuse conviction remained the same.

of evidence is a preliminary question of law that this Court reviews de novo." *Denson*, 500 Mich at 396.

"An error in the admission or the exclusion of evidence is not a ground for reversal unless refusal to take this action appears inconsistent with substantial justice." *People v McLaughlin*, 258 Mich App 635, 650; 672 NW2d 860 (2003), citing MCR 2.613(A) and MCL 769.26. That is, "reversal is required only if the error is prejudicial. The defendant claiming error must show that it is more probable than not that the alleged error affected the outcome of the trial in light of the weight of the properly admitted evidence." *Id.* (citations omitted).

Claims of evidentiary error not raised in the trial court are reviewed for plain error affecting substantial rights. See *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish that a defendant's substantial rights were affected, a defendant must generally demonstrate that the error caused them "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* at 763-764.

Before trial, the trial court granted the prosecution's motion to admit evidence of defendant's prior acts of domestic violence against Desiree pursuant to MCL 768.27b. MCL 768.27b(1) provides, in relevant part, as follows:

> [I]n a criminal action in which the defendant is accused of an offense involving domestic violence . . . , evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE] 403.

As this Court explained in *People v Berklund*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367568); slip op at 8: "MCL 768.27b is an exception to [the] general bar on propensity evidence; in prosecutions for offenses involving domestic violence or sexual assault, MCL 768.27b permits evidence of a defendant's prior commission of domestic violence or sexual assault to show the defendant's character or propensity to commit such acts." Prior bad-acts evidence of domestic violence can be admitted at trial because "a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed." *Id.* (citation and quotation marks omitted, alteration in original).

MCL 768.27b contains three limitations on the introduction of prior acts of domestic violence. *Id.* at ___; slip op at 4. First, "[e]vidence of an act occurring more than 10 years before the charged offense" is generally not admissible. *Id.* (quotation marks and citation omitted). Second, the evidence must be relevant, as defined by MRE 401 and MRE 402. *Id.* Third, such evidence is also not admissible if it is "excluded under [MRE 403]." *Id.* (quotation marks and citation omitted). This third limitation—exclusion under MRE 403—is the issue defendant raises on appeal.

In relevant part, "MRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* at ___; slip op at 9. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). "The trial court is in the best position to make MRE 403 determinations on the basis of a contemporaneous assessment of the presentations, credibility, and effect of testimony . . . ." *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010) (quotation marks and citation omitted).

Evidence of prior bad acts nearly always carries some amount of prejudice, but may still be admissible if its probative value is not *substantially* outweighed by the danger of *unfair* prejudice. See *Crawford*, 458 Mich at 384-385, 398; MRE 403. "Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). And when determining whether other-acts evidence should be excluded under MCL 768.27b in particular, a court may consider:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Berklund*, ___ Mich App at ___; slip op at 10, quoting *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012).]

However, these factors are simply "a tool to facilitate, not a standard to supplant, a trial court's MRE 403 analysis." *Berklund*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). Further, "when applying MRE 403 to evidence admissible under MCL 768.27b, courts should weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at ___ & n 6; slip op at 10 & n 6.

## 1. DESIREE'S TESTIMONY

Defendant first argues that the trial court erred by admitting testimony by Desiree pertaining to prior acts of domestic violence because the probative value of Desiree's testimony was substantially outweighed by the danger of unfair prejudice. We disagree.

The prosecution filed a notice of intent to introduce the challenged other-acts evidence, see MCL 768.27b(2), attaching police reports describing one incident in which defendant assaulted Desiree at her place of work and another incident in which defendant kidnapped, beat, and threatened her. Desiree later testified at trial, consistent with these reports, that around September 2020, after the two had argued about her posting something on Facebook about DS's father, defendant showed up at her workplace, brought her into a bathroom, and beat her. Desiree also

testified that defendant beat her up several times in Kalamazoo. On one occasion, defendant kidnapped her in a vehicle, pulling over several times into alleyways by her home and workplace to beat her, and then continued driving her around, telling her that he was "looking for somewhere to drop [her] body."

In ruling that the prosecution could present the evidence, the trial court observed that there was nothing in the statute requiring that the victim of proposed other-acts evidence be the same age or gender as the victim in the case or that they cannot be a household member. The court also commented that although it appreciated defendant's concerns about prejudice, the statute allows propensity evidence. Accordingly, it remarked that "[t]he fact that there were previous acts of domestic violence or violence generally, against a member of the defendant's household, certainly would demonstrate propensity to have a violent act against another member of the household."

On appeal, defendant argues that the evidence was not highly probative to begin with. To evaluate the probative value of the evidence, we will employ the relevant *Berklund/Watkins* factors listed above. See *Berklund*, ___ Mich App at ___; slip op at 10, citing *Watkins*, 491 Mich at 487-488. Regarding "the dissimilarity between the other acts and the charged crime," *id.* at 487, while it is true that the victim differed in age, gender, and relationship to defendant, the violence was directed toward a member of the household. As for "the temporal proximity of the other acts to the charged crime," *id.*, the police reports relied upon by the prosecution in its notice indicate that the incidents occurred on September 9, 2020 and October 20, 2020, very close in time to the charged incident, which occurred on November 7, 2020.

Concerning whether there was a "lack of reliability of the evidence supporting the occurrence of the other acts," *id.*, although defendant is correct that criminal charges against defendant related to the incidents were dismissed because Desiree recanted her allegations, police reports supported the testimony that the prosecution sought to introduce, and Desiree testified that she had recanted due to her fear of defendant. Therefore, the recantation may affect the weight of the evidence but does not preclude its admissibility. See *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854); slip op at 9.

Regarding "the lack of need for evidence beyond the complainant's and the defendant's testimony," *Watkins*, 491 Mich at 487-488, Desiree's testimony of defendant's history of domestic violence provides an explanation as to why defendant killed DS. The primary evidence of the charged offense was expert testimony about DS's injuries and cause of death, as well as the testimony of the events leading up to DS's death. This evidence explained who killed DS, how DS was killed, and when DS was killed; however, it did not explain why DS was killed. Prior-acts evidence showing that defendant behaved violently toward DS's mother after she posted a photograph of DS and his father on social media provide insight into motive. And the fact that there were previous acts of domestic violence against a member of defendant's household demonstrates that defendant had the propensity to commit an act of violence against other members of defendant's household. See *People v Railer*, 288 Mich App 213, 220-221; 792 NW2d 776 (2010). Given all these considerations, the evidence was fairly probative.

Defendant also argues that Desiree's testimony was unfairly prejudicial because it was inflammatory, as she testified that defendant "beat the shit" out of her, "beat [her] ass in that alley," and that defendant drove around "looking for somewhere to drop [her] body." Although some of

the language was striking, it paled in comparison to the expected medical testimony detailing DS's injuries. For example, the medical examiner testified that the injuries that 18-month-old DS endured were "not really known to occur outside of motor vehicle accidents, falls from a height, perhaps somebody that got run over by a tractor." Thus, in context, Desiree's descriptions of the abuse, though grave, were not so inflammatory as to cause unfair prejudice that *substantially* outweighed the probative value of the propensity evidence. See *Railer*, 288 Mich App at 220.

Relatedly, defendant argues that Desiree's testimony was unfairly prejudicial because the jury would give the evidence undue weight and the evidence would cause the jury to base its decision on bias, sympathy, anger, or shock. As for the weight the jury could have accorded to the testimony, it bears noting that the testimony was brief, not cumulative, and was not significantly emphasized. Further, the trial court gave a limiting instruction. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Therefore, the limiting instruction reduced the possibility of unfair prejudice. See *Berklund*, ___ Mich App at ___; slip op at 11.

Overall, the probative value of Desiree's testimony, which went to propensity and motive, was not substantially outweighed by the danger of unfair prejudice. This is especially so given that we must "weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at ___ & n 6; slip op at 10 & n 6. Further, a trial court's decision on a close evidentiary question "ordinarily cannot be an abuse of discretion." *Thorpe*, 504 Mich at 252. Therefore, the trial court did not abuse its discretion when it admitted Desiree's testimony of defendant's other acts.

## 2. FRANKLIN'S TESTIMONY

Defendant next argues that the trial court erred by admitting other-acts evidence through the testimony of Molly Franklin, Desiree's neighbor, because it did not fall within the scope of MCL 768.27b and because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. We disagree.

Franklin testified about two occasions in which she observed defendant put the children in danger. On one occasion, she heard Desiree screaming, and when she went outside, she saw defendant "take off, speeding" down the street in a car, and he had the two youngest children (DS and JC) with him. Defendant then "aggressively" took the children out of the car, and DS was in a car seat but JC was not buckled in. On another occasion, when Desiree was at work, Franklin saw defendant "booking it, going 90" down the street, and she called Desiree because she thought that defendant had the children in the car, although she was not sure if the kids had been left alone or were in the vehicle.

Defendant did not object to Franklin's testimony; therefore, this issue is not preserved for appellate review, see *Thorpe*, 504 Mich at 252, and we review it for plain error affecting substantial rights. See *Lukity*, 460 Mich at 495-496; *Carines*, 460 Mich at 763-764.

On appeal, defendant argues that the incidents described by Franklin do not fall within the scope of MCL 768.27b because they are not incidents of domestic violence. MCL 768.27b(6)(a) provides as follows:

"Domestic violence" . . . means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

(*iii*) Causing or attempting to cause a family or household member to engage in involuntary sexual activity by force, threat of force, or duress.

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable individual to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Given this statutory definition, the incidents described by Franklin qualify as domestic violence. Franklin's testimony supports an inference that defendant's actions placed Desiree's children, who were household members,[4] in "fear of physical or mental harm" or that defendant engaged in activity toward them that "would cause a reasonable person to feel terrorized, frightened, intimidated, harassed, or molested." MCL 768.27b(6)(a)(*ii*) and (*iv*). The testimony indicates that in both situations a reasonable child would be frightened by riding in a fast car, unsecured, and away from their mother. Even assuming that the children were not in the car during the second incident, they were left alone unsupervised. And, the conduct toward the children could also constitute domestic violence against their mother, as Franklin testified that Desiree was screaming, a sign of distress. See MCL 768.27b(6)(a)(*ii*) and (*iv*). Accordingly, these incidents meet the definition of "domestic violence" under MCL 768.27b(6), so MCL 768.27b applied to Franklin's testimony.

Defendant also argues that the probative value of the testimony was substantially outweighed by the dangers of unfair prejudice. First, he argues that the probative value of the evidence was minimal. But like Desiree's testimony, Franklin's testimony is probative of the likelihood that defendant committed the charged offense because of his history of domestic violence. The incidents described by Franklin are arguably even more probative than the other-acts against Desiree, because evidence that defendant behaved violently toward the children in the past supports an inference that he would do it again. Considering "the dissimilarity between the other acts and the charged crime," *Watkins*, 491 Mich at 487, the other acts are not as severe as the charged crime, but they are similar to the extent that they involved domestic violence by defendant against DS. Regarding the frequency of the other acts, *id.*, Franklin described only two acts with specificity, but she testified that she saw defendant place the children in danger "numerous times." As for "the lack of need for evidence beyond the complainant's and the defendant's testimony," *Watkins*, 491 Mich at 487-488, this evidence was probative because it was the only testimony by a third party unrelated to the family, and it was also the only evidence

_____

[4] MCL 768.27b(6)(b)(*ii*) further provides that "household member" includes "an individual with whom the person resides or has resided."

presented that defendant had acted violently toward Desiree's children, including DS, on other occasions. Therefore, as with Desiree's testimony, Franklin's testimony was fairly probative.

Defendant also argues that even if Franklin's testimony constituted past acts of domestic violence, it was unfairly prejudicial because it was inflammatory and confused the issues. But, as with Desiree's testimony, Franklin's testimony that defendant took off speeding down the street potentially with the two children in the car is fairly tame compared to the extensive testimony on the cause of DS's death. Also, as discussed earlier, the trial court provided a limiting instruction that further reduced the possibility of prejudice. *Berklund*, ___ Mich App at ___; slip op at 11. Plus, Franklin's testimony was brief and not cumulative, and there was little potential for confusing or misleading the jury because the charged offense was very different. Finally, we must "weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at ___ & n 6; slip op at 10 & n 6. Accordingly, the evidence was not so inflammatory or confusing that its probative value was substantially outweighed by the danger of undue prejudice.

In sum, Franklin's testimony fell within the scope of MCL 768.27b and the danger of unfair prejudice did not substantially outweigh its probative value. Therefore, the trial court did not commit plain error when it admitted Franklin's testimony regarding defendant's other acts of domestic violence.

## B. DOUBLE JEOPARDY

Defendant next contends that convictions for first-degree felony murder and first-degree child abuse violate the prohibition against double jeopardy when both offenses arise from the same act. We review questions of constitutional law de novo. *People v Johnson*, 340 Mich App 531, 542; 986 NW2d 672 (2022).

Although defendant acknowledges that this Court's decision in *People v Magyar*, 250 Mich App 408; 648 NW2d 215 (2002), is controlling on this issue, he argues that it was wrongly decided and should be overruled. This we cannot do. See MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals . . . ."). In *Magyar*, we held that a single assaultive act constituting first-degree child abuse that results in a child's death can serve as the predicate for a felony-murder conviction if the defendant acted with the requisite intent. *Magyar*, 250 Mich App at 412-413. And in *Jones*, ___ Mich App at ___; slip op at 15-16, we similarly rejected—citing *Magyar*—a defendant's argument that he could not be convicted of first-degree murder and first-degree child abuse when both charges stemmed from a singular act. Moreover, our Supreme Court has held that a defendant may be convicted of felony murder and the underlying felony without violating the prohibition against double jeopardy. *People v Ream*, 481 Mich 223, 225-226; 750 NW2d 536 (2008). Because we are bound by *Ream*, *Magyar*, and *Jones*, defendant's double-jeopardy argument fails.

## C. PROPORTIONALITY OF SENTENCE

The final issue defendant raises on appeal involves the proportionality of his sentence. Specifically, defendant argues that the trial court erred at resentencing by failing to consider his youth and its distinctive characteristics as mitigating factors as required by *People v Boykin*, 510

Mich 171, 188-189; 987 NW2d 58 (2022). We agree that resentencing is required because the record does not demonstrate that the trial court treated defendant's youth as mitigating.

"Sentencing decisions are reviewed for an abuse of discretion. An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *Id*. at 182 (citation omitted). A trial court necessarily abuses its discretion if it imposes a sentence that violates the principle of proportionality, which requires that every sentence be proportionate to the seriousness of the offense and the circumstances of the offender. *People v Brcic*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket Nos. 362727 and 366230); slip op at 10. Trial courts must justify the sentence imposed to facilitate appellate review. *Boykin*, 510 Mich at 192.

In *Parks*, our Supreme Court held that persons convicted of first-degree murder for an offense committed when they were 18 years old are entitled to all the protections afforded by MCL 769.25 and its associated caselaw, including *Boykin*. *Parks*, 510 Mich at 267-268 & n 19. As relevant here, because defendant was 18 years old at the time of the offense and the prosecution did not file a motion seeking LWOP, the trial court was required to impose a term-of-years sentence with a minimum sentence between 25 and 40 years' imprisonment. *Id*.; MCL 769.25(4), (9). The trial court imposed a minimum sentence of 40 years, the maximum allowed under the statute. The question before us is whether the trial court, in imposing such a sentence, properly treated defendant's youth as a mitigating factor.

In *Boykin*, the Court held that "in all sentencing hearings conducted under MCL 769.25 . . . , trial courts are to consider the defendant's youth *and must treat it as a mitigating factor*." *Boykin*, 510 Mich at 189 (emphasis added). The Court explained that this requirement is part of "the principle of proportionality, which requires sentences imposed to be proportionate to the seriousness of the circumstances surrounding the offense *and the offender*." *Id*. at 188 (quotation marks and citation omitted). There are four basic considerations at sentencing, known as the *Snow* factors: the reformation of the offender, the protection of society, disciplining the wrongdoer, and deterrence of others. See *id*. at 188, citing *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). "Youth," the *Boykin* Court explained, "affects these considerations." *Boykin*, 510 Mich at 188.

> For example, since a greater possibility exists that a minor's character deficiencies will be reformed, the mitigating qualities of youth *necessarily* transform the analysis of the first *Snow* criterion. Without considering the mitigating factors of youth, then, a sentence cannot adequately address the reformation of the offender. Next, because youth have a heightened capacity for change relative to adults, the needs for protecting society should be given individualized consideration, which *necessarily* considers the way youth affects the defendant's ability to change. In addition, because it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character, *Snow*'s focus on discipline of the wrongdoer *must* be viewed differently under the lens of youth. Nor can deterrence do the work in this context, because the same characteristics that render juveniles less culpable than adults make them less likely to consider potential punishment. Given that youth is a mitigating factor, it will

*inevitably* factor into *Snow*'s four considerations.  [*Id*. at 188-189 (cleaned up) (emphasis added).]

The *Boykin* Court further held that although trial courts are required to consider youth in this way and treat it as mitigating, they are not required to "articulat[e] *specific* factors on the record" or "give a *detailed* on-the-record explanation of one or more specific factors."  *Id*. at 192 (second emphasis added).  Yet, as with sentencing generally, a trial court "must adequately explain its sentence on the record in order to facilitate appellate review," *id*. at 194, and "articulating how the court considered the defendant's youth when fashioning an appropriate sentence enhances an appellate court's ability to review the proportionality of that sentence," *id*. n 9.  This Court later summarized this component of *Boykin*'s holding as follows: "[T]here are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth within *Snow*'s sentencing criteria.  A court sentencing a juvenile defendant to a term-of-years sentence under [MCL 769.25] is required only to make a record demonstrating that the court considered the defendant's youth *and treated it as a mitigating factor*."  *People v Copeland*, 350 Mich App 577, 587; 34 NW3d 9 (2024) (emphasis added).

Returning to the present case, we do not believe the trial court made such a record.  Two related observations drive our analysis.  First, although the trial court evinced awareness of defendant's age and considered at least some of its attendant characteristics, the trial court never said that it was *treating* his age and those characteristics as *mitigating*.  For example, at the resentencing hearing, the trial court stated, "I am well aware of the science as it relates to the developing brain, and I do take that into consideration when imposing the sentence in this particular case.  However, there is other information that I think is important," at which point the trial court turned to discuss what it described as "the absolute brutality of this crime."  Similarly, when defendant's counsel referenced a psychological evaluation from an expert that addressed the ways in which the *Miller* factors applied to defendant, the trial court stated: "Very good.  I have reviewed it.  I've read it in its entirety, and I will make it part of the record."  These statements demonstrate that the trial court knew about and considered defendant's youth, but they do not demonstrate that the trial court actually "*treated it as a mitigating factor*."  *Id*. (emphasis added).[5]

Second, the reasons the trial court provided for the sentence it imposed did not reflect any of the ways in which youth necessarily informs the *Snow* factors.  As stated, the trial court emphasized the "brutality" of the offense.  The trial court also highlighted defendant's conduct after the offense, describing it as "abhorrent," as well as defendant's "significant history of violent behavior."  These considerations—defendant's conduct before, during, and after the offense—

---

[5] As our Court observed in *People v Boykin (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued October 5, 2023 (Docket No. 335862), p 7: "[I]t was not adequate for the trial court to consider *whether* defendant's youth was a mitigating factor; rather, [*Boykin*] directs that the trial court *must* consider a juvenile's age *as* a mitigating factor."  By contrast, in *People v Jones*, unpublished per curiam opinion of the Court of Appeals, issued February 9, 2026 (Docket No. 368322), p 9, we affirmed when "[t]he trial court explicitly stated several times that it had considered defendant's youth as a mitigating factor."  Unpublished opinions are not binding but may be persuasive.  *People v Roy*, 346 Mich App 244, 251 n 2; 12 NW3d 183 (2023).

were relevant to sentencing. But in discussing them, the trial court gave no indication that it understood or treated them as being mitigated by defendant's youth—even though "the mitigating qualities of youth *necessarily* transform the analysis" with regard to all four *Snow* criteria. *Boykin*, 510 Mich at 188-189 (emphasis added).

In this regard, we are persuaded by the discussion and analysis of the lead opinion in *People v Abbatoy*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2024 (Docket No. 364852), pp 6-9. As explained in that case, *Boykin* signifies that youth is not merely a "stand-alone" sentencing factor, to be "considered" and then balanced or weighed against other facts like the heinousness of the crime or the criminal history of the defendant. *Id*. at 8. Instead, because youth has a mitigating influence on all four *Snow* criteria that go into the ultimate sentencing decision, the trial court "must consider the *Snow* factors *in light of* [the defendant's] youth." *Id*. So, for example, insofar as the heinousness of a defendant's conduct or an apparent lack of remorse might bear on the need to protect society or punish wrongdoing, a defendant's youth necessarily mitigates how harsh a punishment must be to achieve those objectives. See *Boykin*, 510 Mich at 188-189. Yet, in the present case, there is no indication in the record that the trial court understood or treated defendant's youth and its attendant characteristics as mitigating the ways in which defendant's conduct before, during, or after the offense made him deserving of the maximum punishment available.[6]

We recognize that "there are no magic words or phrases that a trial court must use" under these circumstances. *Copeland*, 350 Mich App at 587. However, a trial court is "required to make a record demonstrating that the court considered the defendant's youth *and* treated it as a mitigating factor," *id.* (emphasis added), and we cannot affirm a sentence unless the trial court has done so. Here, given that the trial court did not expressly state that it treated defendant's youth as mitigating, combined with the lack of any other indication that it understood and treated defendant's age to be mitigating as part of the *Snow* criteria, we conclude that the trial court abused its discretion. We will therefore vacate and remand for resentencing.

### III. CONCLUSION

Defendant's convictions are affirmed, his 40-to-60-year sentence is vacated, and we remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Sima G. Patel
/s/ Daniel S. Korobkin

---

[6] This does not necessarily mean that the trial court cannot impose a 40-year sentence. As this Court has observed, "a 'mitigating factor' as used in the context of the law generally refers to a circumstance that makes a bad action easier to understand and excuse, and *may* result in the person responsible being punished less severely." *Boykin (On Remand)*, unpub op at 6 (cleaned up) (emphasis added). Our decision today merely requires the trial court to make a record demonstrating that the court treated defendant's youth as having a mitigating influence upon the court's overall *Snow*-factor-related considerations.